UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re                                                        :
                                                             :
LEHMAN BROTHERS, INC.,                                       :     15 Civ. 8903 (LGS)
                                              Debtor.        :
                                                             :     **OPINION AND ORDER**
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__7/6/2016__

LORNA G. SCHOFIELD, District Judge:

These are cross-appeals from an opinion and order entered in the bankruptcy case of Appellee Lehman Brothers, Inc. ("LBI") allowing in part and disallowing in part the claim of Appellant Jonathan Hoffman through his entity 1EE LLC ("Hoffman") and entirely disallowing the claim of Appellant Wayne Judkins (together the "Appellants" or "claimants"). Judge Chapman issued this opinion and order after the conclusion of a three-day merits hearing held from April 22 to 24, 2015, where the Court heard seven witnesses, including all Appellants and representatives of Appellee, and received voluminous written and audio recorded exhibits into evidence. For the reasons set forth below, the Bankruptcy Court is affirmed in part and reversed in part as to Hoffman and affirmed as to Judkins.

**I.   BACKGROUND**[1]

**A. The LBI/Barclays Asset Purchase Agreement**

On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI"), the holding company for the group of entities organized to form Lehman Brothers, filed for bankruptcy. The next day,

---

[1] Unless otherwise noted, the facts herein are taken from the Bankruptcy Court's Findings of Fact. *See In re Lehman Brothers Inc.*, 541 B.R. 45, 53-77 (S.D.N.Y. 2015). On appeal, the Bankruptcy Court's factual findings are accepted as true unless clearly erroneous. *See O'Rourke v. United States*, 587 F.3d 537, 540 (2d Cir. 2009). As described further below, the Bankruptcy Court committed no clear error in arriving at its Findings of Fact, and they are adopted in their entirety.

LBHI, LBI, and other Lehman entities entered into an asset purchase agreement (the "APA") with Barclays pursuant to which Barclays agreed to purchase the majority of Lehman's North American capital markets and investment banking assets.  The APA included Barclays' commitment to offer employment to each LBI employee who worked in the acquired business and to make certain payments to those LBI employees who accepted Barclays' offer.

Each LBI employee who accepted Barclays' offer of employment was defined as a "Transferred Employee" under the APA.  The APA provides for Barclays to "pay each Transferred Employee an annual bonus . . . in respect of the 2008 Fiscal Year that, in the aggregate, are equal in amount to 100 percent of the bonus pool amounts accrued in respect of amounts payable for incentive compensation (but not base salary)."  After the Bankruptcy Court approved the APA, Barclays offered employment to LBI's employees, including the claimants.

### B. The Claimants

#### 1. Jonathan Hoffman

Hoffman was a proprietary trader at LBI and held the title of Managing Director. Hoffman began work at LBI in 1994.  Since at least 2001, his LBI employment was pursuant to a series of annually negotiated employment agreements.  Hoffman was an extremely successful trader, generating billions of dollars in profit for Lehman over the course of his employment through the trading of interest rate products.

##### a. Hoffman's 2007 and 2008 LBI Employment Agreements

For the years 2007 and 2008, Hoffman entered into separate employment agreements with LBI providing for a $200,000 annual salary and an annual bonus based on his trading performance.  This bonus, for each year, was equal to twelve percent of the first $25 million in net profit generated, followed by fourteen percent of net profit above $25 million, less his salary.

Both agreements provided that portions of this compensation could be paid in equity awards, as opposed to cash.

Hoffman's bonus for each of 2007 and 2008 was to be paid in two installments. The first installment, equal to seventy-five percent of Hoffman's total performance bonus less his annual salary and payable in a combination of cash and stock, was to be paid when LBI paid its bonuses for the fiscal year in which the bonus was earned. The remaining twenty-five percent, payable entirely in cash, served as a clawback, withholdable if Hoffman lost money for LBI in the subsequent fiscal year, and was payable at the same time as the fiscal year's first bonus payment.

When LBI and Barclays entered into the APA, Hoffman was owed $7,712,500 in cash as the second installment of his 2007 bonus. The Bankruptcy Court calculated Hoffman's total 2008 bonus to be $75,339,600. Thus, LBI owed Hoffman a total of $83,052,100 on the date the APA was signed. Of this amount, Hoffman would have received $7,712,500 in cash for the second installment of his 2007 bonus, payable with the first installment of his 2008 bonus, totaling $62,289,075 in a discretionary combination of cash and stock. He would have received a second installment for 2008 of $18,884,900 in cash -- assuming Hoffman traded profitably through 2009.

### b. Hoffman's Employment Negotiations with Barclays

Hoffman neither accepted nor declined Barclays' initial offer of employment pursuant to the APA, and instead entered into a series of negotiations concerning the terms of his employment and, critically, the structure of his compensation. As the Bankruptcy Court found and the appellate record makes clear, Hoffman's primary concern in these negotiations was securing the approximately $83 million bonus he was owed by LBI. "Indeed, Mr. Hoffman testified that he told Barclays he was 'looking for $83 million to come work here' because 'it

was no secret to them that I had lost $83 million.'" *In re Lehman Brothers Inc.*, 541 B.R. at 63 (internal citation omitted).  Demanding the $83 million in bonus payments was "part of his 'negotiating strategy.'"  *Id.*

Hoffman's focus on the $83 million bonus is clearly reflected in the audio recordings Hoffman secretly made of his meetings and conversations with various Barclays officials.  For example, Hoffman recorded a September 23, 2008, meeting with Barclays executive Rich Ricci, during which Hoffman explained to Ricci that he had "legacy compensation issues that are substantial," referring to the $83 million he was owed by LBI.  Ricci responded: "I hear you on the comp.  And I think if we were to move forward we're going to have to figure something out, because we want you motivated."

After internal discussions on how best to compensate Hoffman for the $83 million he was owed by LBI, Barclays proposed a compensation package that attempted to match the payouts Hoffman would have received under his LBI employment contract.  Hoffman rejected this offer, and the parties engaged in further negotiations -- not as to the *amount* Hoffman was to be paid, as Barclays recognized he was owed $83 million from LBI and intended to pay it, but instead as to the precise timing of the bonus payments.  As the Bankruptcy Court found, "[t]he evidentiary record is clear that Barclays ultimately agreed to pay Mr. Hoffman the $83 million he was owed by LBI."  *Id.,* at 67.

### c. Barclays' $83 Million in Payments to Hoffman

Hoffman entered into an employment agreement with Barclays on October 3, 2008 (the "Barclays Agreement").  The agreement listed Hoffman's start date as September 22, 2008, the same day the sale pursuant to the APA had closed.  The Barclays Agreement largely replicated the core compensation provisions of Hoffman's previous employment agreement with LBI.  It

provided for a $200,000 base salary, and a bonus equivalent to twelve percent of the first $25 million in net profits, and fourteen percent of net profits above $25 million.

In addition to his core compensation, the Barclays Agreement also provided for the full payment of the $83 million Hoffman was owed by LBI. It did so through the use of "Special Awards," totaling $70 million and payable in three installments over three years. The remaining $13 million of Hoffman's LBI bonus was provided through increased performance incentives. Instead of receiving twelve percent of the first $25 million in profit and fourteen percent of profit thereafter up to a total of $13 million, Hoffman would receive twenty percent of all net profits until he received the final $13 million. Thus, in total, the Barclays Agreement provided for $83 million in special compensation in addition to the compensation package for Hoffman's work going forward with Barclays.

The Bankruptcy Court found that Hoffman received all of this $83 million special compensation. "In all, Mr. Hoffman received $100 million in compensation for his trading performance at Barclays during 2008 to 2010, *in addition to the $83 million in Special Awards and increased profit sharing he received from Barclays on account of his LBI bonuses.*" *Id*. at 69 (emphasis added). Barclays expressed "surprise[]" when it learned of Hoffman's claim against LBI, as "'he was due $83 million from Lehman and [Barclays] paid it to him.'" *Id.*

### 2. Wayne Judkins

Judkins was a proprietary trader at LBI and held the title of Senior Vice President at the time of Lehman's bankruptcy. Judkins began his employment with LBI in January 2008, trading U.S. government bonds.

#### a. Judkins' 2008 LBI Employment Agreement

Judkins' 2008 written employment agreement with LBI provided for a base salary of

$200,000 and a minimum bonus of $800,000. While Judkins asserts that he was told he would receive additional bonus compensation if he performed well, "he admits that the $800,000 bonus was the only bonus guaranteed in writing." *Id.* at 74. Judkins further conceded that any bonus amounts that he may have been awarded for 2008 above the minimum guarantee would have been awarded in the sole discretion of LBI's management, and that LBI owed him only an $800,000 guaranteed bonus for the 2008 fiscal year at the time of its bankruptcy. *Id.* at 75.

### b. Barclays' $800,000 Payment to Judkins

Unlike Hoffman, Judkins accepted Barclays' initial offer of employment without engaging in further negotiations. Barclays provided Judkins with a written employment contract agreeing to pay him the same total compensation that he would have received from LBI in 2008. Barclays paid Judkins the $800,000 bonus he was owed for 2008 by LBI, all in cash, in February 2009.

## II. DISCUSSION

The Bankruptcy Court correctly concluded that LBI delegated to Barclays through the APA LBI's responsibility to pay Hoffman and Judkins their 2008 bonuses, and did not clearly err in determining that Hoffman and Judkins did, in fact, receive these bonus payments. As to the last installment of Hoffman's 2007 bonus, the Bankruptcy Court did not err in finding that Hoffman's 2007 LBI bonus fell outside the scope of LBI's delegation to Barclays, but was incorrect in concluding that LBI therefore remains liable for this obligation. Hoffman received the total amount of his 2007 LBI bonus from Barclays, and Barclays made this payment intending to satisfy LBI's entire bonus obligation to Hoffman. Hoffman is therefore precluded from seeking a double recovery from LBI's estate.

This Court reviews the Bankruptcy Court's factual findings for clear error and

conclusions of law *de novo*.  *See, e.g.*, *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482-83 (2d Cir. 2012) (citing Fed. R. Bankr. P. 8013).

      A.  **Delegation of Bonus Obligations to Barclays**

The Bankruptcy Court correctly found that section 9.1(c) of the APA served to delegate LBI's responsibility to pay Hoffman and Judkins' outstanding bonuses to Barclays.  *See In re Lehman Brothers Inc.*, 541 B.R. at 83.  That section provides, in relevant part:

> On or after the Closing, [Barclays] shall, or shall cause its subsidiaries to, pay each Transferred Employee an annual bonus ("08 Annual Bonuses") in respect of the 2008 Fiscal Year that, in the aggregate, are equal in amount to 100 percent of the bonus pool amounts accrued in respect of amounts payable for incentive compensation (but not base salary) and reflected on the financial schedule delivered to Purchaser on September 16, 2008 . . . .  Such 08Annual Bonuses shall be awarded on or before March 15, 2009 in such forms and proportions as are consistent with Purchaser's customary practices . . . .

The plain language of this section evinces LBI's delegation of its obligations to pay Transferred Employees bonuses in respect of LBI's 2008 fiscal year.  Each of Hoffman and Judkins' arguments as to why the plain language of the APA should not be construed as a delegation fail.

*First*, Appellants argue that there can be no delegation of a duty in the absence of a formal assumption of LBI's employment contracts.  It is undisputed that Barclays did not assume LBI's employment contracts, and that the APA specifically disclaimed any employment-related liabilities apart from those explicitly contained in Section 9 of the APA (including the bonus provision relevant to this case).  However, a formal assumption of Appellants' LBI employment contracts was not required to effect a delegation of the narrow duty to pay LBI's 2008 bonuses; indeed, this was expressly what LBI and Barclays agreed to in Section 9.1(c) of the APA.  The fact that this obligation was transferred to Barclays via a delegation rather than an assumption of LBI's employment contracts does not render Barclays' promise to pay ineffective; it simply

means that LBI retains liability to Transferred Employees if their 2008 fiscal year bonuses are not paid.  *See Contemporary Mission Inc. v. Famous Music Corp.*, 557 F.2d 918, 924 (2d Cir. 1977) ("[W]hen rights are assigned, the assignor's interest in the rights assigned comes to an end. When duties are delegated, however, the delegant's obligation does not end.").  A formal assumption of Appellants' LBI employment contracts is not a prerequisite to the effective delegation of LBI's obligation to pay its 2008 bonuses to Barclays.

*Second*, Hoffman is incorrect that there is "no evidence that LBI delegated its obligations to pay [Hoffman and Judkins] to Barclays."  The APA itself effects the delegation of LBI's obligation to pay 2008 bonuses to Transferred Employees to Barclays, and therefore is sufficient evidence.  Hoffman and Judkins are incorrect in arguing that the parole evidence rule bars consideration of any evidence beyond that contained within the four corners of their Barclays employment agreements in determining whether Barclays paid them their 2008 LBI bonuses on LBI's behalf.  Appellants cannot invoke the parole evidence rule against Appellee or against LBI itself, as neither was party to Appellants' Barclays employment agreements.  *See, e.g.*, *Scherer v. Kane*, 284 F. App'x 850, 852-53 (2d Cir. 2008) (declining to apply parol evidence rule to a third party to a contract); *SIN, Inc. v. Dep't of Fin. Of City of N.Y.*, 126 A.D.2d 339, 344 (1st Dept. 1987) ("Generally, the parol evidence rule would be available for use only by one of the parties to this [agreement] against the other"), *aff'd,* 71 N.Y.2d 616 (1988)).  Also, a "court should accord [ ] language [in a contract] its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish."  *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d. Cir. 2006).  The Bankruptcy Court needed to consider, and properly considered, all of the available evidence in determining whether LBI had delegated its payment obligations to Barclays, and whether Barclays had met those obligations.

*Third*, Hoffman and Judkins both argue that the delegation is ineffective because they neither consented to the delegation nor were they third-party beneficiaries to the APA. This argument misstates the law. An obligee's consent is not required to effect a delegation, as "most obligations [including payment obligations] can be delegated as long as performance by the delegate will not vary materially from performance by the delegant." *Contemporary Mission Inc.*, 557 F.2d at 924, *accord* 9 Corbin on Contracts § 49.6 n.1 ("a mere assumption of delegated duties does not constitute a novation that requires the consent of the obligee."). Similarly, a delegation need not create third-party beneficiary rights in order to be effective. In support of his assertion to the contrary, Hoffman points to cases from this court and a Missouri lower court that merely provide examples of delegations creating third-party beneficiary rights. He provides no authority holding that such rights *must* exist in order to effect a delegation. Especially here, where Hoffman and Judkins could have pursued claims against LBI (as delegate) if Barclays had failed to pay their 2008 bonuses (as delegee), no third-party beneficiary rights are required or created.

The Bankruptcy Court correctly held that LBI delegated to Barclays its obligation to pay bonuses in respect of its 2008 fiscal year. The scope of this delegation is limited to the terms of section 9.1(c) of the APA.

### B.  Jonathan Hoffman

Hoffman appeals the Bankruptcy Court's finding that Barclays paid Hoffman the $83 million LBI owed him for 2007 and 2008. LBI appeals the Bankruptcy Court's finding that, of the $83 million paid to Hoffman, $7.7 million related back to bonuses owed from LBI's 2007 fiscal year, and therefore fell outside the scope of LBI's delegation to Barclays and remained an obligation of the LBI estate. The Bankruptcy Court is affirmed as to Hoffman's 2008 bonus, and

reversed as to Hoffman's 2007 bonus. Of the $83 million owed to Hoffman and paid by Barclays, none of that amount may also be claimed against the LBI estate.

Hoffman is incorrect to suggest that the Bankruptcy Court relied solely on Barclays' "unexpressed subjective belief" that it paid Hoffman what LBI owed him. In its opinion, the Bankruptcy Court carefully analyzed the full record after a multi-day merits hearing, drawing on the testimony of Hoffman himself, various representatives of Barclays and LBI, and -- perhaps most compelling -- Hoffman's secret audio recordings of his conversations with Barclays executives. Based on all of this evidence, the Bankruptcy Court concluded that Hoffman negotiated a non-standard compensation package at Barclays in order to secure his $83 million LBI bonus; Barclays made Hoffman an offer including such a compensation package; Hoffman accepted Barclays' offer of employment, becoming a Transferred Employee under the terms of the APA; and Barclays paid Hoffman all that he was owed by LBI, $83 million.

Hoffman argues for reversal of the Bankruptcy Court and endorsement of his pursuit of an $83 million claim against the Lehman estate for bonus payments he already received. The record, however, supports the Bankruptcy Court's factual findings and does not show them to be clearly erroneous. It strains credulity to argue, as Hoffman does here, that the $83 million that Barclays agreed to pay in extra compensation was a mere signing bonus or motivational tool, and that the amount only coincidentally matched the amount that Hoffman was owed by LBI. While Hoffman naturally prefers his interpretation of the facts, "[t]he decisions as to whose testimony to credit and which of permissible inferences to draw are solely within the province of the trier of fact, and where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 213 (2d Cir. 2001) (internal quotation omitted) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985). The

Bankruptcy Court's findings that Barclays structured Hoffman's employment agreement to pay him the $83 million owed to him by LBI, that Hoffman was a Transferred Employee, and that Barclays paid Hoffman $83 million in satisfaction of that LBI's obligation, were neither clearly erroneous nor contrary to law.

The Bankruptcy Court also held that $7.7 million of the $83 million payment represented the second installment of Hoffman's 2007 bonus, and was outside the scope of LBI's delegation to Barclays -- and for that reason allowed him to pursue $7.7 million of his original claim against LBI's estate.  This was in error.  While the Bankruptcy Court was correct in holding that bonuses in respect to LBI's 2007 fiscal year fell outside the scope of LBI's delegation to Barclays, it also found that, as a factual matter, "the $83 million Barclays paid to Mr. Hoffman . . . was intended to satisfy LBI's obligation to pay Mr. Hoffman his 2007 and 2008 bonus in respect of work performed by him while at LBI."  *In re Lehman Brothers Inc.*, 541 B.R. at 90.

Notwithstanding whether a debtor expressly delegates an obligation to a third party, "a performance rendered by [a] third person that is bargained for and received by [a] claimant in satisfaction of [a] claim operates as a discharge of the debtor."  13 Corbin on Contracts § 70.6; *accord Mathias v. Jacobs*, 238 F. Supp. 2d 556, 571-72 (S.D.N.Y. 2002) ("[The claimant] is entitled to the benefit of only one full performance and one satisfaction of a contractual debt; he cannot collect twice to discharge the same obligation, whether payment is made by the promisor himself, by a third person, or by both.").  This common-sense precept of contract law does not require action by the debtor; if a third party negotiates with an obligee to pay the debt of an obligor, and the obligee accepts that payment, the obligor's debt is discharged.  The obligee, as a matter of law and equity, is not entitled to double performance on the same contract.  Here, the evidence is sufficient to support the Bankruptcy Court's factual finding that Hoffman negotiated

11

with Barclays for payment of his entire outstanding LBI bonus. Barclays paid Hoffman $83 million in satisfaction of that claim. In so doing, and as a matter of law, Barclays discharged LBI's entire liability to Hoffman -- not just LBI's liability for the portion of the bonus payment it had delegated to Barclays, but the second installment of Hoffman's 2007 fiscal year payment as well.

Hoffman's remaining arguments are without merit. He negotiated for and received everything he was owed, and now seeks to collect an $83 million windfall from LBI's estate. His claim is barred in its entirety.

### C. Wayne Judkins

Judkins appeals the following two findings of the Bankruptcy Court: *First*, that Barclays paid Judkins the $800,000 he was owed pursuant to a delegation from LBI under the APA, and *second*, that Judkins was not entitled to a claim for an unspecified additional performance bonus purportedly promised to Judkins orally. The Bankruptcy Court was correct on both points and Judkins' claim for $800,000 was properly barred by the Bankruptcy Court.

There is no dispute that Judkins is a Transferred Employee. Therefore, as with Hoffman, LBI delegated its obligation to pay Judkins' 2008 bonus to Barclays. Pursuant to his employment agreement with LBI, Judkins was owed an $800,000 bonus for the 2008 fiscal year. Pursuant to his employment agreement with Barclays, Judkins received an $800,000 bonus for the 2008 fiscal year in February 2009. For substantially the same reasons described in connection with Hoffman's claim, the Bankruptcy Court properly held that this payment was in satisfaction of LBI's debt to Judkins, and that Judkins is not entitled to double performance on the same obligation.

The Bankruptcy Court also properly rejected Judkins' claim for an unspecified additional

performance bonus.  LBI's bonus policy provides that "[b]onuses *are not guaranteed unless otherwise agreed upon in writing*, and are determined at the full discretion of senior Firm management."  Even accepting Judkins' assertion that he was orally promised an additional bonus in exchange for positive performance by LBI, his claim for this bonus fails.  Judkins' written employment contract contemplates only the $800,000 bonus he was paid by Barclays and is silent as to any additional performance bonus.  Therefore, any additional bonus would be purely discretionary, and LBI's policy makes clear that no employee is entitled to a discretionary bonus without a written agreement.

Judkins' remaining arguments are without merit.  He has received all he was owed.  The Bankruptcy Court's order barring his claim is therefore affirmed.

### III. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's opinion and order are AFFIRMED in part and REVERSED in part as to Hoffman and AFFIRMED as to Judkins.  This matter is remanded to the Bankruptcy Court for entry of an order barring both Hoffman and Judkins' claims in full.  The Clerk of Court is directed to close Dkt. No. 29 and to close this appeal.

SO ORDERED.


Dated: July 6, 2016
    New York, New York

                              _____
                              **LORNA G. SCHOFIELD**
                              **UNITED STATES DISTRICT JUDGE**